[Cite as *State v. Kern*, 2024-Ohio-5976.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                     Court of Appeals No.  WD-24-010

    Appellee                                 Trial Court No. 2023 CR 0043

v.

Robert James Kern                          **DECISION AND JUDGMENT**

    Appellant                               Decided:   December 20, 2024

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Chief Assistant Prosecuting Attorney, for appellee.

Adam H. Houser, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} In this appeal, following a guilty plea, defendant-appellant, Robert James

Kern, appeals the September 21, 2023 judgment of the Wood County Court of Common

Pleas, convicting him of possession of a fentanyl-related compound, tampering with

evidence, and abuse of a corpse, and sentencing him to an aggregate term of 24 months in

prison, to be served consecutively to the sentences imposed by the Defiance County

Court of Common Pleas in Case No. 19-CR-13531 and Case No. 20-CR-13928.  For the following reasons, we affirm.

## I.  Background

{¶ 2} On February 2, 2023, Kern was indicted in Wood County Case No. 2023CR0043 and charged with four separate counts: Count 1, possession of a fentanyl-related compound, in violation of R.C. 2925.11(A) and R.C. 2925.11(C)(11)(a), a fifth-degree felony; Count 2, tampering with evidence, in violation of R.C. 2921.12(A)(1) and R.C. 2921.12(B), a third-degree felony; Count 3, gross abuse of a corpse, in violation of R.C. 2927.01(B) and R.C. 2927.01(C), a fifth-degree felony; and Count 4, abuse of a corpse, in violation of R.C. 2927.01(A) and R.C. 2927.01(C), a second-degree misdemeanor.

{¶ 3} Kern was arraigned on February 21, 2023 and entered a plea of not guilty to all charges.  On September 19, 2023, the trial court held a change-of-plea hearing.  Pursuant to a plea agreement with the State, Kern pleaded guilty to Count 1 (possession of a fentanyl-related compound), Count 2 (tampering with evidence), and Count 4 (abuse of a corpse).  The State agreed to move to dismiss Count 3 at sentencing.

{¶ 4} After advising Kern of his rights, the trial court asked the State to present the facts that underlie the charges associated with Kern's guilty pleas.  According to the State, Kern was with a female acquaintance, K.B., on May 24, 2023 in Weston, Ohio when she overdosed on fentanyl.  According to a text message that Kern sent at approximately 10:00 AM, K.B. had "died in his arms."  Kern's text messages also "discuss[ed] deleting text messages with what appears to be the person who provided the

2.

drugs." Over an hour after "the final text message" acknowledging that K.B. had already died, Kern drove K.B. to the hospital with assistance from family members, and "purported she had a pulse, that she was breathing, that she had issues with COPD. There were no statements made referencing any fentanyl use."

{¶ 5} Paramedics attempted to work on K.B., but they discovered that she must have passed away "several hours earlier than what was reported" due to her body temperature. In addition, the deceased body "was in full rigor at the time" which is "consistent with a much earlier death."

{¶ 6} The State indicated that Kern had warrants out for his arrest at the time, and the police responded to the Weston residence. There, police discovered a baggy with apparent drug residue, which tested positive for fentanyl. The baggy was also tested for DNA, and it was found to contain the DNA of both K.B. and Kern.

{¶ 7} The trial court asked Kern whether "those [are] the facts you're entering pleas of guilty to," and he stated that he disagreed with the facts because he "obviously didn't know it was fentanyl in the bag," he "didn't know you couldn't move a body," and he "thought that COPD was what killed her." Kern admitted, however, that the facts, as presented by the State, were "enough . . . to get a conviction" and that was why he was "taking this deal." The trial court accepted Kern's guilty pleas, found him guilty of Count 1 (possession of a fentanyl-related compound), Count 2 (tampering with evidence), and Count 4 (abuse of a corpse), and proceeded to sentencing.

{¶ 8} Defense counsel argued that the trial court should consider the following circumstances "in mitigation": K.B. (not Kern) purchased the drugs, K.B. "did have

3.

COPD" and "[s]he was not in good health," and Kern has "learned from this." Defense counsel expressly stated that Kern "understands [his sentences] can be consecutive or concurrent," but asked the court to consider "a one-year concurrent sentence."

{¶ 9} The State then asked the trial court to impose consecutive sentences. It argued that Kern did not report the death because he was on probation and had warrants for his arrest when K.B. died, which made his conduct "more serious." Kern was intentionally attempting to mislead investigators, and he fled the hospital even though he said he was "going to stick around."

{¶ 10} Regarding the tampering charge, the State pointed out that Kern has already been sentenced to a tampering with evidence charge in the past. It argued that deleting text messages to intentionally mislead was "a serious situation." The State asked the court to impose a 36-month sentence consecutive to Kern's sentence in Defiance County, due to his "criminal history [and] based on the fact he was on probation."

{¶ 11} Kern then addressed the court himself. He stated that did not destroy text messages (although he was asked to), he thought K.B., his fiancé, had died from COPD because she had been "coughing out blood for a week," and he did what he did because K.B. "constantly" told him to "never call the EMS" because she did not have money or insurance. In addition, Kern knew that he had warrants and he was afraid because he's "the only parent to [his] kids." He and K.B. both "went over the edge at the same time that day," even though he had been sober for six months before that. Kern loved K.B. and tried to kill himself with heroin the day after she died.

4.

**{¶ 12}** The trial court acknowledged the dismissal of Count 3, per the plea agreement. The trial court considered the requirements of R.C. 2929.11. The court stated that although there are "potentially extenuating circumstances and a lot of complications within this," prison was an appropriate sentence because Kern had a "long history that includes tampering with evidence, drug offenses," and he had "served a period of time in prison previously."

**{¶ 13}** The trial court sentenced Kern to 12 months in prison for Count 1 (possession of a fentanyl-related compound), 24 months in prison for Count 2 (tampering with evidence), and 90 days in prison for Count 4 (abuse of a corpse)—all to be served concurrently. The court then ordered the sentence for Count 2 to be served consecutively "to the term imposed in Defiance County" based on the following:

> Consecutive sentence is necessary to protect the public from future crime and to punish the offender particularly in this particular situation. It's not disproportionate to the seriousness of the offender's conduct. The victim in this case died. There were efforts to conceal that or conceal how it happened.

> And the danger, considering the offenses, considering the long history, I believe there is a danger you present to the public, and this was done while on community control, and with the criminal history, to protect the public.

**{¶ 14}** The trial court's sentences are included in its judgment entry dated September 21, 2023, where it explicitly stated that it had considered R.C. 2929.11 and R.C. 2929.12 before imposing the prison sentences in this case. In addition, regarding consecutive sentences, the trial court stated:

> All of the factual circumstances in this case were considered in imposing consecutive sentences pursuant to R.C. 2929.14(C)(4). The Court

5.

found that Defendant had multiple offenses and that these multiple offenses necessitated the imposition of consecutive sentences, which were appropriate in this case because it was necessary to protect the public from future crime of the Defendant and to punish the Defendant. The Court further found that a consecutive sentence was not disproportionate to the seriousness of the Defendant's conduct and to the danger the Defendant poses to the public. Further, Defendant was on community control in Defiance County, and in violation of that probation, when he committed these offenses. The victim in this case died. Defendant's criminal history also demonstrates that consecutive sentences are necessary to protect the public from future crime by the Defendant.

{¶ 15} Kern appealed, and assigns a single error for our review:

A. The Trial Court Did not follow the Principal and Purposes of Ohio Law when it Sentenced Appellate [sic] to Consecutive Sentences.

## II. Law and Analysis

{¶ 16} In support of his assignment of error, Kern argues the trial court erred in imposing his prison sentences because (1) the trial court "did not properly consider" the mitigating factors of R.C. 2929.12 before sentencing him to prison, and (2) the trial court did not adequately explain its findings in support of consecutive sentences under R.C. 2929.14(C)(4).[1]

{¶ 17} We review sentencing challenges under R.C. 2953.08(G)(2). The statute allows an appellate court to increase, reduce, or otherwise modify a sentence or vacate

---

[1] These are the only arguments contained in Kern's brief that are potentially relevant to this case. Kern's brief also includes several pages of facts and argument that appear to have been cut-and-pasted by appellate counsel from another brief in which the trial court's imposition of consecutive sentences was raised as error on appeal—albeit in a matter involving claims of gross sexual imposition and multiple victims. This is unacceptable. We remind appellate counsel of the duty of competent representation under Rule of Prof. Conduct 1.1, and the duty to act with reasonable diligence under Rule of Prof. Conduct 1.3.

6.

the sentence and remand the matter for resentencing only if it clearly and convincingly finds either of the following:

> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

R.C. 2953.08(G)(2).

{¶ 18} Regarding Kern's arguments relating to the mitigating factors of R.C. 2929.12, "R.C. 2953.08(G)(2) does not permit an 'appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12.'" *State v. Bowles,* 2021-Ohio-4401, ¶7 (6th Dist.), quoting *State v. Jones,* 2020-Ohio-6729, ¶ 42; *see also, e.g., State v. Johnson,* 2021-Ohio-2139, ¶ 14 (6th Dist.), citing *State v. Orzechowski,* 2021-Ohio-985, ¶ 10 (6th Dist.); *State v. Woodmore,* 2021-Ohio-1677, ¶ 17 (6th Dist.).

{¶ 19} Kern does not allege that the trial court failed to consider the mitigating factors of R.C. 2929.12; he claims the trial court did not "properly" consider these factors. But, as we have previously held, "*Jones* precludes this court from reviewing a felony sentence based solely upon an appellant's contention that the trial court did not properly consider the factors identified in R.C. 2929.11 and 2929.12 when determining an appropriate sentence." *State v. Shepard*, 2021-Ohio-1844, ¶ 14; *see also State v. Orzechowski*, 2021-Ohio-985, ¶ 13 (6th Dist.) ("[A]ssigning error to the trial court's

imposition of sentence as contrary to law based solely on its consideration of R.C. 2929.11 and 2929.12 is no longer grounds for this court to find reversible error."). We therefore reject Kern's arguments relating to R.C. 2929.12.

{¶ 20} Kern also argues that his consecutive sentence is contrary to law. Under R.C. 2929.14(C)(4), where a trial court imposes multiple prison terms for convictions of multiple offenses, it may require the offender to serve the prison terms consecutively if it finds that "consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public," and if it also finds any of the following:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 21} This statute requires the trial court to make three statutory findings before imposing consecutive sentences. *State v. Beasley*, 2018-Ohio-493, ¶ 252; *State v. Bonnell*, 2014-Ohio-3177, ¶ 26. It must find that (1) consecutive sentences are necessary to protect the public or to punish the offender; (2) consecutive sentences are not

8.

disproportionate to the seriousness of the offender's conduct and to the danger that the offender poses to the public; and (3) R.C. 2929.14(C)(4)(a), (b), or (c) is applicable. *Beasley* at ¶ 252. "[T]he trial court must make the requisite findings *both* at the sentencing hearing and in the sentencing entry." (Emphasis in original.) *Id.* at ¶ 253, citing *Bonnell* at ¶ 37. While "a word-for-word recitation of the language of the statute is not required," a reviewing court must be able to discern that the trial court engaged in the correct analysis and the record must contain evidence to support the trial court's findings. *Bonnell* at ¶ 29.

{¶ 22} In a plurality decision, *State v. Gwynne*, 2023-Ohio-3851, ¶ 5 ("*Gwynne V*"), vacating *State v. Gwynne*, 2022-Ohio-4607 ("*Gwynne IV*"), the Ohio Supreme Court explained that "[t]he plain language of R.C. 2953.08(G)(2) requires an appellate court to defer to a trial court's consecutive-sentence findings, and the trial court's findings must be upheld unless those findings are clearly and convincingly not supported by the record." While *Gwynne V,* as a plurality opinion is merely persuasive authority, *State v. Mills,* 2023-Ohio-4716, the Ohio Supreme Court subsequently clarified this court's standard of review of consecutive sentence findings in *State v. Jones,* 2024-Ohio-1083. There, the court held that "[c]onformity with R.C 2929.14(C)(4) requires the trial court to 'note that it engaged in the analysis and that it 'has considered the statutory criteria and specified which of the given bases warrants its decision.'" *Id.* at ¶ 14. "[A] reviewing court must be able to ascertain from the record evidence to support the trial court's findings." *Id.* The imposition of consecutive sentences will be upheld "provided the

9.

necessary findings can be found in the record and are incorporated in the sentencing entry."

{¶ 23} The "clear and convincing evidence" required under R.C. 2953.08(G)(2) is "'that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Id.* at ¶ 14, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.  The lead opinion concluded that an appellate court "must have a firm belief or conviction that the record does not support the trial court's findings before it may increase, reduce, or otherwise modify consecutive sentences." *Id.* at ¶ 15.

{¶ 24} In this case, the trial court ordered Kern's 24-month prison sentence for Count 2 (tampering with the evidence) to be served consecutively to the prison sentences imposed on Kern in Defiance County case Nos. 19-CR-13531 and 20-CR-13928.  In support of this consecutive sentence, the trial court made the following findings during the sentencing hearing and in the judgment entry: (1) consecutive sentences are necessary to protect the public or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger that the offender poses to the public; and (3) Kern was on community control when he committed these offenses (R.C. 2929.14(C)(4)(a)) *and* Kern's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime (R.C. 2929.14(C)(4)(c)).  Accordingly, the trial court made the findings required

10.

by the statute for the imposition of consecutive sentences. Indeed, Kern admits that the trial court "did say the statement required under R.C. 2929.14(C)(4)."

{¶ 25} Instead, Kern argues that "the court just states the degree of harm was so great that consecutive sentences were necessary to protect the public" and "[t]he court does not give any reason or facts for the degree of harm." The trial court, however, did not make findings under R.C. 2929.14(C)(4)(**b**)—i.e., that portion of the statute requiring a finding of "great or unusual" harm. The trial court imposed a consecutive sentence under R.C. 2929.14(C)(4)(**a**) (offenses while under community control) *and* R.C. 2929.14(C)(4)(**c**) (history of criminal conduct).

{¶ 26} To the extent that Kern is attempting to argue that the trial court's finding under R.C. 2929.14(C)(4)(c)—i.e., that Kern's criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime—is somehow deficient because the court did not sufficiently explain its findings is without merit. The trial court referenced Kern's "long history" of criminal activity at the sentencing hearing. Thus, the record shows that the trial court made the applicable finding. *See State v. McIntoush,* 2024-Ohio-2284, ¶ 19, citing *Jones* at 15-16 (holding that reference to a defendant's criminal history in the record is sufficient to support a trial court's findings under R.C. 2929.14(C)(4)(c) even when trial court made no express finding referencing the statute). Additionally, the record shows that Kern does not dispute that he was on community control when the offenses occurred, which independently supports the imposition of consecutive sentences under R.C. 2929.14(C)(4)(a).

{¶ 27} For all these reasons, we find Kern's assignment of error not well-taken.

11.

### III. Conclusion

{¶ 28} In conclusion, under *Jones*, 2020-Ohio-6729, we are precluded from reviewing Kern's sentences based solely on his contention that the trial court did not properly consider R.C. 2929.12 before imposing a term of prison. In addition, Kern fails to demonstrate that the trial court's imposition of a consecutive sentence is clearly and convincingly not supported by the record. Kern's assignment of error is not well-taken.

{¶ 29} The September 21, 2023 judgment of the Wood County Court of Common Pleas is affirmed. Kern is ordered to pay the costs of this appeal under App. R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Christine E. Mayle, J. _____

Gene A. Zmuda, J. _____

Chales E. Sulek, P. J. _____
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.